# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DANIEL J. STOTTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 14-cv-2156 (KBJ) |
| | ) | |
| UNITED STATES AGENCY FOR | ) | |
| INTERNATIONAL DEVELOPMENT, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

Plaintiff Daniel Stotter submitted a document request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to the United States Agency for International Development ("USAID") on April 10, 2014, seeking records that describe "any USAID or United States financial grants or funding directed to any Pakistan based media organizations for the purpose of supporting Pakistan related media projects[,]" from January 1, 2007, through the time of the request.  (Am. Compl., ECF No. 4, ¶ 13.) Eight months later, on December 21, 2014, Stotter filed the instant FOIA lawsuit, claiming that USAID had "fail[ed] to provide [him] with all non-exempt responsive records for his April 10, 2014[,] FOIA request."  (*Id.* ¶ 47.)[1]

---

[1] Stotter's complaint originally named as co-defendants the Broadcasting Board of Governors and the Department of State.  (*See* Compl., ECF No. 1, at 1.)  These defendants have since been dismissed from the lawsuit due to their settlements with Stotter on October 12, 2016, and November 18, 2016, respectively.  (*See* Notice of Settlement by Broadcasting Board of Governors, ECF No. 45; Notice of Settlement by Department of State, ECF No. 49.)

Before this Court at present are the parties' cross-motions for summary judgment.  (*See* Mem. in Supp. of Def.'s Mot. for Summ. J. ("Def.'s Mot."), ECF No. 17-1; Pl.'s Mot. for Partial Summ. J. and Opp'n to Def.'s Mot. ("Pl.'s Mot."), ECF No. 21.)  USAID has now produced all of the records it deems responsive to Stotter's FOIA request—totaling 1705 pages (*see* Def.'s Mot. at 11)—and the crux of the parties' dispute is whether the agency was justified in employing FOIA Exemption 6, as well as Exemption 4, to redact some of the responsive documents (*see* Pl.'s Mot. at 7–17).[2]  In order to resolve these issues, Stotter asks the Court to conduct an *in camera* review of the responsive records.  (*See id.* at 17–18.)

For the reasons explained below, this Court finds that USAID has appropriately relied on Exemption 6 to justify certain redactions, which clearly relate to sensitive personal information that the agency is entitled to withhold, and the agency has also complied with the FOIA's segregability requirement with respect to Exemption 6 such that no *in camera* review is warranted.  However, due to an intervening Supreme Court opinion that underscores the need for supplemental briefing and/or declarations, this Court is unable to resolve the parties' dispute regarding USAID's invocation of Exemption 4 based on the present record.  Accordingly, USAID's motion for summary judgment will be **GRANTED IN PART and DENIED IN PART**, and Stotter's motion for partial summary judgment will be **DENIED**.  A separate order consistent with the memorandum opinion will follow.

---

[2] Page-number citations to the documents that the parties and the Court have filed refer to the page numbers that the Court's Electronic Case Filing System ("ECF") automatically assigns.

## I.      BACKGROUND[3]

### A. Factual Background

In a letter dated April 10, 2014, which was addressed to USAID, Stotter sought copies of all records concerning "USAID or United States financial grants or funding directed to any Pakistan based media organizations for the purpose of supporting Pakistan related media projects[,]" between January 1, 2007, and the date of his request. (Am. Compl. ¶ 13.)  Soon after Stotter submitted this FOIA request, USAID's FOIA Office distributed it to various other agency branches, both in the United States and locally in Pakistan, each of which searched for responsive records.  (*See* Decl. of Lynn P. Winston, Ex. 2 to Def.'s Mot., ECF No. 13-2, ¶ 6–13.)  The various offices located responsive documents and reviewed the found materials for any exempt information—including sensitive financial or personal information—before sending the records back to USAID's FOIA Office.  (*See id.* ¶¶ 6–13.)

Then, on June 5, 2014, USAID notified Stotter that some potentially responsive records had been identified and were under review for clearance, and that, once cleared, the documents would be released to Stotter on a rolling basis.  (*See* Am. Compl. ¶ 18.) Around August 24, 2014, USAID provided Stotter with the first tranche of documents—213 responsive pages, of which 36 were produced in full and 177 were partially redacted.  (*See id*. ¶ 20.)  According to USAID, this production consisted of grant clearance forms for USAID's programs in Pakistan, which USAID contractors or grantees had submitted to request USAID approval for a sub-grant.  (*See* Decl. of

---

[3] The facts recited herein are alleged in the amended complaint, or in the agency's summary judgment motion, and have also been incorporated by reference in Stotter's cross-motion for summary judgment. (*See* Pl.'s Mot. at 4–5.)  Thus, except where otherwise noted, these background facts are undisputed.

Stephen Lennon ("Lennon Decl."), Ex. 1 to Def.'s Mot., ECF No. 13-1, ¶ 6.)  Because these grant clearance forms contained sensitive information about the proposed sub-grantee, as well as USAID's overall grantmaking strategy—including specific information pertaining to American and Pakistani individuals and groups, such as their precise geographic location (*see id.*) and budget information (*see id.* ¶ 10)—some of the responsive documents were redacted.

When USAID released these documents, it clarified that the agency had not completed its search for records that were responsive to Stotter's FOIA request (*see* Am. Compl. ¶ 20), nor had USAID completed its processing of the records that it had located by the time Stotter filed this lawsuit in December of 2014 (*see* Def.'s Answer, ECF No. 7, ¶ 26).

### B. Procedural History

Stotter's complaint, which was filed on December 21, 2014, seeks declaratory and injunctive relief for USAID's failure to provide him with all non-exempt records responsive to his FOIA request of April 10, 2014.  (*See* Am. Compl. ¶ 1.)  After Stotter's complaint was filed, the various agency offices involved in the search for records confirmed that they had completed their searches and had provided all documents to the USAID FOIA Office.  (*See* Def.'s Mot. at 10.)  Thus, as of June 30, 2015, USAID had released 1,705 pages of responsive material to Stotter, some of which was redacted pursuant to claimed exemptions.  (*See* Ex. 1 to Def.'s Notice of Filing of Letter Providing Bates Stamped Records, ECF No. 14-1, at 1.)

In the context of the instant lawsuit, the agency maintains that "[t]he documents that USAID has produced are grant clearance forms for one of USAID's programs in Pakistan."  (Lennon Decl. ¶ 6.)  "These documents are submitted by a USAID

4

contractor or grantee to request USAID approval to award a sub-grant[,]" and as a result, "[e]ach grant clearance form contains a range of details about the proposed sub-grant[]" and "USAID's overall strategy for the program at the local, regional, and national scope[,]" in addition to "[i]nformation pertaining to American and Pakistani individuals and groups, as well as their location[.]"  (*Id.*)  Consequently, the agency claims to have withheld two general categories of information with respect to the records it released.  First, "pursuant to FOIA Exemption (b)(6), USAID redacted from the grant clearance forms identifying information of contractor, grantee, and sub-grantee staff and beneficiaries, and related information that could be used to identify them, such as the name of a group with whom they were affiliated, or its location."  (*Id.* ¶ 9.)  Second, with respect to each of the grant clearance forms, "a page of budget information from the grantee . . . was redacted pursuant to FOIA Exemption 4."  (*Id.* ¶ 10.)

The parties have since proceeded to file cross-motions for summary judgment in this Court.  (*See* Def.'s Mot. (filed on December 14, 2015); Pl.'s Mot. (filed on January 18, 2016).)  The agency's motion argues that USAID's supplemental declarations and *Vaughn* index together sufficiently demonstrate the adequacy of the agency's search process, and that these filings also establish that the agency's withholdings are justified.  (*See* Def.'s Mot. at 11.)  For example, as relevant here, USAID argues that FOIA Exemption 6—which covers personnel, medical, and similar files implicating personal privacy—applies to the grant clearance forms at issue, because the material contains myriad personal details about American and Pakistani individuals and groups, and the disclosure of such information would compromise protected privacy interests and

threaten the safety of the individuals and groups mentioned in the records given the risky security environment in Pakistan, in a manner that raises concerns that outweigh the minimal public interest in the identifying information.  (*See id.* at 24–25.)  USAID also contends that FOIA Exemption 4—which protects commercial and financial information—similarly precludes the disclosure of forms that detail budgetary information, which might cause competitive disadvantages if disclosed.  (*See id.* at 19.)  Finally, USAID argues that, in carefully reviewing the responsive materials and cataloguing the withholdings so as to justify the category of sensitive material the agency has withheld, it has satisfied its segregability burden, and that no additional non-exempt material remains to be segregated and released.  (*See id.* at 26–27.)

Stotter's summary judgment motion argues that USAID has improperly applied Exemptions 6 and 4 in various ways.  (*See* Pl.'s Mot. at 7–17.)  In particular, Stotter maintains that USAID has misapplied Exemption 6 to withhold information pertaining to organizations, as opposed to individuals (*see id.* at 8–9), and that, in any event, the agency has alleged "only highly speculative potential harm that 'could occur,'" which fails to exceed the public interest in the disclosure of such information (*see id.* at 11–13).  Similarly, Stotter contends that USAID has improperly invoked Exemption 4 to withhold financial information in the absence of evidence of actual competition and evidence of the likelihood of competitive injury resulting from disclosure of the material at issue.  (*See id.* at 15–16.)  Stotter also argues that, "by employing overly broad withholdings and redactions" under those exemptions, the agency has failed to satisfy its burden of releasing all reasonably segregable, non-exempt information.  (*See id.* at 17.)

The parties' cross-motions for summary judgment have been fully briefed (*see* Def.'s Reply and Opp'n to Pl.'s Cross-Mot. for Summ. J. ("Def.'s Reply"), ECF No. 31), and are now ripe for this Court's consideration.[4]

## II.   LEGAL STANDARDS

### A. Summary Judgment In FOIA Cases

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (citing *Bigwood v. U.S. Agency for Int'l Dev.*, 484 F. Supp. 2d 68, 73 (D.D.C. 2007)).  A district court deciding a motion for summary judgment in a FOIA case must review the record *de novo*, and has the authority "to order the production of any agency records improperly withheld from the complainant."  5 U.S.C. § 552(a)(4)(B).  "In reviewing the agency action, the Court must analyze the facts and inferences in the light most favorable to the FOIA requester." *Unrow Human Rights Impact Litig. Clinic v. Dep't of State*, 134 F. Supp. 3d 263, 271 (D.D.C. 2015).

Under Rule 56 of the Federal Rules of Civil Procedure, a court may grant summary judgment only when the pleadings, materials on file, and affidavits "show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  To prevail on summary judgment with respect to a FOIA claim, the agency must demonstrate that it has: (1) conducted an

---

[4] On December 6, 2016, Stotter notified the Court that he "inadvertently did not timely file his final reply briefing . . . due to confusion by [Plaintiff's counsel] as to the multi-party briefing schedule[.]" (Pl.'s Consent Mot. for Extension of Time, ECF No. 52, at 1.)  The Court denied Stotter's request for an extension to file a reply brief, in light of "the history of this action, which includes multiple missed deadlines and extension requests, and also Plaintiff's failure to demonstrate the existence of any circumstances that justify the proposed filing of a brief that was due more than four months ago, much less 'exceptional' circumstances[.]"  (Minute Order of Dec. 6, 2016.)

adequate search for responsive records, (2) withheld records only pursuant to a valid FOIA exemption (if at all), and (3) released to the requestor all non-exempt and reasonably segregable responsive records.  *See Walston v. Dep't of Def.*, 238 F. Supp. 3d 57, 62 (D.D.C. 2017) (crediting the agency's argument that "summary judgment is warranted because it conducted an adequate search for records in response to [Plaintiff's] FOIA request; properly redacted its productions pursuant to the applicable FOIA exemptions; and complied with FOIA's segregability requirement").

The first requirement "for an agency to prevail on summary judgment [is to] prove that its search was reasonable[,]" *Conservation Force v. Ashe*, 979 F. Supp. 2d 90, 98 (D.D.C. 2013), "which it can do by submitting '[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched[,]'" *Reporters Comm. for Freedom of Press v. F.B.I.*, 877 F.3d 399, 402 (D.C. Cir. 2017) (second alteration in original) (quoting *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)).  Although the responsive records that an agency locates in the course of an adequate search ordinarily must be released in full to the requestor, the FOIA authorizes agencies to withhold certain documents, in whole or in part, pursuant to any of nine statutory exemptions.  *See Milner v. Dep't of Navy*, 562 U.S. 562, 564 (2011).  Thus, for the agency to prevail on summary judgment, in addition to demonstrating the adequacy of the search, the agency must "demonstrate that the records have not been improperly withheld."  *Ctr. for the Study of Servs. v. Dep't of Health & Human Servs.*, 874 F.3d 287, 288 (D.C. Cir. 2017) (internal quotation marks and citation omitted).

8

"The burden is on the agency to justify withholding the requested documents, and the FOIA directs district courts to determine *de novo* whether non-disclosure was permissible." *Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.*, 777 F.3d 518, 522 (D.C. Cir. 2015). Affidavits from agency officials that explain the withholdings are sufficient to support summary judgment "when the affidavits describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (quoting *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984)). By contrast, "conclusory and generalized allegations of exemptions" do not suffice to support summary judgment. *Morley v. C.I.A.*, 508 F.3d 1108, 1115 (D.C. Cir. 2007) (quoting *Founding Church of Scientology of Wash., D.C., Inc. v. N.S.A.*, 610 F.2d 824, 830 (D.C. Cir. 1979)). In addition, an agency may seek to justify its withholdings by presenting a detailed listing of the records at issue, the information withheld, and the justification for any withholding. *See generally Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973).

Finally, because the FOIA further mandates that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt[,]" 5 U.S.C. § 552(b), the agency has a duty to produce all non-exempt portions of records that can be reasonable segregated from the exempt parts, and the court must ensure that this segregability requirement is followed, even if it must do so *sua sponte*. *See Morley*, 508 F.3d at 1123.

### B.  FOIA Exemption 6

FOIA Exemption 6 pertains to "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy[.]"  5 U.S.C. § 552(b)(6).  Thus, this exemption protects an *individual*'s substantial privacy interests in the absence of a superseding public interest in disclosure.  *See, e.g.*, *Nat'l Association of Home Builders v. Norton*, 309 F.3d 26, 33 (D.C. Cir. 2002); *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1230 (D.C. Cir. 2008).  This means that "corporations, businesses[,] and partnerships have no privacy interest whatsoever under Exemption 6[,]" *Washington Post Co. v. Dep't of Agric.*, 943 F. Supp. 31, 37 n.6 (D.D.C. 1996); *see also Canning v. Dep't of State*, 134 F. Supp. 3d 490, 514 (D.D.C. 2015); however, "to the extent that identifying information such as an organization's address can implicate the privacy of individuals, releasing such sensitive information about the organization is functionally the same as releasing similar information about the organization's individual members[,]" and is thus exempted under the FOIA's Exemption 6, *Pavement Coatings Tech. Council v. U.S. Geological Survey*, 436 F. Supp. 3d 115, 131 (D.D.C. 2019).

Courts generally follow a two-step process when considering withholdings or redactions pursuant to Exemption 6.  First, the court determines whether the records are the type of personnel, medical, or similar files that the exemption covers.  "The Supreme Court has interpreted the term 'similar files' broadly so as 'to cover detailed Government records on an individual which can be identified as applying to that individual.'"  *Ayuda, Inc. v. F.T.C.*, 70 F. Supp. 3d 247, 264 (D.D.C. 2014) (quoting *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982)); *see also Roseberry-Andrews v. Dep't of Homeland Sec.*, 299 F.Supp.3d 9, 29 (D.D.C. 2018).  Second, if the

records are of the type covered by the exemption, the court proceeds to determine whether their disclosure "would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6); *see also Dep't of Air Force v. Rose*, 425 U.S. 352, 382 (1976); *Long v. I.C.E.*, 279 F. Supp. 3d 226, 243 (D.D.C. 2017).

This latter step itself entails another two-prong analysis, *see Am. Immigration Lawyers Ass'n v. Exec. Office for Immigration Review*, 830 F.3d 667, 673–74 (D.C. Cir. 2016), whereby the court first determines whether "disclosure would compromise a substantial, as opposed to a *de minimis*, privacy interest[,]" *Nat'l Ass'n of Home Builders*, 309 F.3d at 33 (internal quotation marks and citation omitted), and, if a substantial privacy interest is implicated, the court proceeds to evaluate "whether the public interest in disclosure outweighs the individual privacy concerns[,]" *Multi Ag Media.*, 515 F.3d at 1230 (D.C. Cir. 2008) (internal quotation marks and citation omitted).  Notably, "the only relevant 'public interest in disclosure' to be weighed in this balance is the extent to which disclosure would serve the 'core purpose of the FOIA,' which is 'contribut[ing] significantly to public understanding of the *operations or activities of the government*.'"  *Dep't of Defense v. F.L.R.A.*, 510 U.S. 487, 495 (1994) (emphasis in original) (quoting *Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 775 (1989)); *see also Roseberry-Andrews*, 299 F. Supp. 3d at 29–30.

### C.  FOIA Exemption 4

Under FOIA Exemption 4, "trade secrets and commercial or financial information" that an agency obtains from a person and that is otherwise "privileged or confidential" may be withheld.  5 U.S.C. § 552(b)(4).  Thus, an agency may rely on Exemption 4 if it can establish that withheld information is "(1) commercial or

financial, (2) obtained from a person, and (3) privileged or confidential." *Pub. Citizen Health Research Grp. v. F.D.A.*, 704 F.2d 1280, 1290 (D.C. Cir. 1983) (internal citation omitted); *see also* 5 U.S.C. § 551(2) (defining "person" broadly to "include[] an individual, partnership, corporation, association, or public or private organization other than an agency").  Only the last prong is at issue here.

The Supreme Court has recently "set forth a single test for determining whether information—regardless [of] whether voluntarily or involuntarily submitted to the government—is confidential under Exemption 4." *Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*, 436 F. Supp. 3d 90, 109 (D.D.C. 2019).  Specifically, "[a]t least where commercial or financial information is [1] both customarily and actually treated as private by its owner and [2] provided to the government under an assurance of privacy, the information is 'confidential' within the meaning of Exemption 4." *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2366 (2019).  Although the Supreme Court did not "need to resolve" whether the second condition it announced was necessary in every case, it is clear beyond cavil that whether the agency provided an "assurance of privacy" when it receive the information is relevant to determining whether financial information that is shared with the government is "confidential" pursuant to the FOIA's Exemption 4.  *Id.* at 2363; *see also Ctr. for Investigative Reporting*, 436 F. Supp. 3d at 109.

### D. FOIA's Segregability Requirement

Finally, if an agency demonstrates with reasonably specific detail that the information it has withheld logically falls within one of the FOIA's exemptions, and if contrary evidence or agency bad faith does not controvert this justification for the withholdings, courts conclude that the agency has appropriately applied the claimed

exemptions to withhold the disputed information.  *See Larson v. Dep't of State*, 565
F.3d 857, 862 (D.C. Cir. 2009).  However, the FOIA also expressly requires agencies to
*extract* "[a]ny reasonably segregable portion of a record" and provide it to the
requesting party "after deletion of the portions which are exempt."  5 U.S.C. § 552(b).
The difference between the segregability requirement and the FOIA's more general
requirement of disclosure of non-exempt information is that segregability is specifically
concerned with extricability and acknowledges the practical limitations of disclosure
insofar as non-exempt and exempt material may be inextricably interlaced.  Indeed, "it
has long been the rule in this Circuit that non-exempt portions of a document must be
disclosed *unless* they are inextricably intertwined with exempt portions."  *Wilderness
Soc'y v. Dep't of Interior*, 344 F. Supp. 2d 1, 18 (D.D.C. 2004) (quoting *Mead Data
Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977)) (emphasis in
original) (alteration omitted).  Furthermore, "a district court must not 'simply approve
the withholding of an entire document without entering a finding on segregability, or
the lack thereof.'"  *Barouch v. Dep't of Justice*, 962 F. Supp. 2d 30, 55 (D.D.C. 2013)
(quoting *Schiller v. N.L.R.B.*, 964 F.2d 1205, 1210 (D.C. Cir. 1992)).

"To withhold the entirety of a document, the agency must demonstrate that it
cannot segregate the exempt material from the non-exempt and must disclose as much
as possible."  *Hertzberg v. Veneman*, 273 F. Supp. 2d 67, 90 (D.D.C. 2003).  This
showing requires more than "conclusory statements to demonstrate that all reasonably
segregable information has been released."  *Valfells v. C.I.A.*, 717 F. Supp. 2d 110, 120
(D.D.C. 2010) (internal quotation marks omitted).  The government may meet its
obligation of "reasonable specificity" through "[t]he combination of the *Vaughn* index

and [agency] affidavits[,]" *Johnson v. Exec. Office for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002), and the agency need not "commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content . . . because the cost of line-by-line analysis would be high and the result would be an essentially meaningless set of words and phrases." *Mead Data*, 566 F.2d at 261 & n.55; *see also Johnson*, 310 F.3d at 776 (explaining that, "[i]n order to demonstrate that all reasonably segregable material has been released, the agency must provide a detailed justification" for the withheld information's non-segregability, but "the agency is not required to provide so much detail that the exempt material would be effectively disclosed." (cleaned up)).

Where the agency has outlined its review process in detail to show compliance, it is not necessary for the court to conduct *in camera* review to confirm that the agency has complied with the segregability requirement. *See Jett v. F.B.I.*, 241 F. Supp 3d 1, 14 (D.D.C. 2017) (holding that, "[i]n the absence of any reason to believe the [agency's] representation is not made in good faith, the court is satisfied that the [agency] has demonstrated it released to [the requester] any segregable, nonexempt portions of the records at issue"). The D.C. Circuit has also held that, "[w]hen the agency meets its burden by means of affidavits, *in camera* review is neither necessary nor appropriate." *Am. Civil Liberties Union v. Dep't of Def.*, 628 F.3d 612, 626 (D.C. Cir. 2011) (internal quotation marks omitted) (quoting *Hayden v. N.S.A.*, 608 F.2d 1381, 1387 (D.C. Cir. 1979)).

### III.   ANALYSIS

In their cross-motions for summary judgment, the parties are at odds over whether it is appropriate for USAID to invoke FOIA Exemptions 6 and 4 under the circumstances presented here, and whether the agency has fulfilled its obligation to release all segregable material.  (*Compare* Pl.'s Mot. at 3–4 (arguing that USAID has made improper withholdings and has failed to satisfy its statutory obligation to release all reasonably segregable non-exempt material) *with* Def.'s Mot. at 8 (asserting that USAID has properly justified its withholdings and has complied fully with the FOIA's segregability requirement ).)  For the reasons explained below, this Court concludes that USAID's invocation of Exemption 6 was proper with respect to the documents at issue, and that the agency is entitled to summary judgment concerning those particular withholdings, because it has demonstrated that all reasonably segregable material has been released.  However, due to intervening binding precedent, the record is presently insufficient to allow the Court to determine whether the agency has properly justified its withholdings pursuant to Exemption 4, or whether USAID has complied with the FOIA's segregability requirement with respect to this exemption.

### A.  USAID's Withholding Of Identifying Information Was Proper Under FOIA Exemption 6

The FOIA request at issue in this case sought copies of the grant clearance forms that relate to USAID's funding of Pakistan-based media organizations, among other things (*see* Pl.'s Mot. at 3–4), and as it turned out, those grant forms constituted the entirety of the records that USAID located in response to Stotter's request (*see* Def.'s Mot. at 24 (citation omitted)).  USAID released redacted copies of those records, claiming, *inter alia*, that the agency was entitled to withhold personal identifying

information concerning individual and organizational grantees pursuant to Exemption 6. (*See id.* at 19–26.)  As explained below, this Court concludes that USAID has made the requisite showing that the information it has withheld pursuant to Exemption 6 logically falls within the scope of that exemption, because the records qualify as the types of records to which Exemption 6 applies, and the privacy interests at stake are both substantial and outweigh any public interest in disclosure.  *See Pavement Coatings*, 436 F. Supp. 3d at 130.

To begin with, the Court has little doubt that the withheld information in the grant records qualifies as "similar files" for the purpose of Exemption 6, because the "similar files" qualification pertains not only to entire records, but also "bits of personal information, such as names and addresses," the disclosure of which would create "a palpable threat to privacy."  *Judicial Watch, Inc. v. F.D.A.*, 449 F.3d 141, 152–53 (D.C. Cir. 2006) (quoting *Carter v. Dep't of Commerce*, 830 F.2d 388, 391 (D.C. Cir. 1987)).  So, for example, even when the requested records do not themselves qualify as "personnel" files, "[t]he names and contact information of federal employees are the type of information that is eligible for withholding under Exemption 6."  *Long*, 279 F. Supp. 3d at 243.

Here, the grant forms that Stotter seeks contain personal, identifying information about the grant recipients, and USAID represents that it has "redacted from the grant clearance forms identifying information of contractor, grantee, and sub-grantee staff and beneficiaries, and related information that could be used to identify them, such as the name of a group with whom they were affiliated, or its location."  (Lennon Decl. ¶ 9.)  This Court sees no material difference between the information that USAID has

withheld here and the "names[,] work locations, and other personally identifiable information" that has been deemed clearly protected under Exemption 6 in prior cases. *Roseberry-Andrews*, 299 F. Supp. 3d at 30.

In addition to establishing that the redacted information in the grant clearance forms at issue falls within the scope of Exemption 6, USAID has also demonstrated that the privacy interest in non-disclosure is a substantial one and not "*de minimis*." *Nat'l Ass'n of Home Builders*, 309 F.3d at 33. As USAID maintains (*see* Def.'s Reply at 4–5), there is a recognized risk that the release of identifying information concerning individuals who are tied to the U.S. government and who work in a sensitive geopolitical region like Pakistan might subject those individuals to targeting, potential inquiries, or harassment. *See Long*, 279 F. Supp. 3d at 243–44 (finding that "employees have a legitimate privacy interest in avoiding targeted harassment based on their role" in certain sensitive employment-related duties). And in this regard, USAID's declarations ably explain that, "[i]n its work in Pakistan, the U.S. government faces a somewhat risky security environment, one in which U.S. Government staff . . . are careful not to openly advertise their U.S Government affiliation due to security risks and occasional threats." (Lennon Decl. ¶ 7.) Indeed, apparently, "[t]he risks of advertising U.S. affiliation have been noted to USAID in meetings with officials representing the Government of Pakistan and by staff of USAID funded contractors and grantees[,]" and the declaration avers that "[t]he violent extremist actors who are responsible for these threats and who oppose U.S. Government activities would pose a security risk to persons and groups identified in the grant clearance forms as being affiliated with USAID." (*Id.* ¶ 8.)

Lastly, the privacy interest in withholding identifying information regarding USAID-affiliated grantees in Pakistan outweighs any public interest in the disclosure of information.  In fact, it is not at all clear how the withheld information advances the general public interest in shedding light on "the operations or activities of government," *Dep't of Def. v. F.L.R.A.*, 510 U.S. 487, 495 (1994) (internal quotation marks and citation omitted), and the seemingly *de minimis* interest in the identified of the individuals and groups named in the grant records must be weighed against the substantial personal privacy interests that these records implicate (*see* Lennon Decl. ¶¶ 7–8). It is also clear that the unredacted information that USAID has released already details the agency's operations and activities that involve expanding access to, and improving, the quality of media in Pakistan.  (*See, e.g.*, Ex. B to Pl.'s Mot., ECF No. 21-2, at 9–14 (providing the "Program Description" and "over-arching goals" for an agency program called "*Enabling Progressive Media Voices in Pakistan*").)  Thus, "[t]he incremental value of revealing the identity of the affected individuals . . . would provide only a small benefit to the public interest[,]" *Pinson v. Dep't of Justice*, 243 F. Supp. 3d 74, 84 (D.D.C. 2017) (internal citation and quotation marks omitted)), and that interest is not manifestly more important than the privacy interest of grantees or partners of the USAID in Pakistan.

Stotter's arguments in support of the view that the information at issue has nevertheless been improperly withheld are unpersuasive.  For instance, Stotter maintains that USAID has submitted a *Vaughn* index and affidavits that are insufficient to distinguish between personal identifying information involving *individuals* (which Exemption 6 protects) and personal identifying information involving *organizations as*

*a whole* (to which Exemption 6 is inapplicable).  (*See* Pl.'s Mot. at 8; *see also, e.g.*, Def.'s *Vaughn* Index, Ex. 3 to Def.'s Mot., ECF No. 13-3, at 1 (explaining that the information redacted relates to "individuals *and* groups" (emphasis added)).)  To be sure, as explained above, courts have consistently held that Exemption 6 "cover[s] detailed Government records on an individual which can be identified as applying to that individual" and whose disclosure might invade that individual's privacy interests, *Ayuda*, 70 F. Supp. 3d at 264 (internal citation and quotation marks omitted), and that "organizations have no privacy interests" under Exemption 6, *Canning*, 134 F. Supp. 3d at 514.  But the "privacy interest at stake may vary depending on the context in which it is asserted[,]" *Armstrong v. Executive Office of the President*, 97 F.3d 575, 582 (D.C. Cir. 1996), and Stotter fails to explain why the individual-versus-organization distinction makes any difference in this particular case.

In particular, courts in this circuit have long held that, under certain circumstances, "an individual person's privacy interests might be implicated even if the name or address at issue pertains to an organization or other non-individual entity." *Pavement Coatings*, 436 F. Supp. 3d at 131.  For example, where "organizations whose identities have been withheld are very small[,]" the "organizational identity of . . . grantees is information [that] . . . 'applies to a particular individual,' and thus . . . may be protected from disclosure by Exemption 6 of the FOIA."  *Bigwood*, 484 F. Supp. 2d at 76.  This same analysis gave rise to the D.C. Circuit's conclusion in *Judicial Watch, Inc. v. F.D.A.*, 449 F.3d 141 (D.C. Cir. 2006), where the FDA had redacted "the names of agency personnel and private individuals *and companies* who worked on the approval of mifepristone"—an abortion medication—as well as "the street addresses of the

intervenors and all business partners associated with the manufacturing of the drug."
*Id.* at 153.  The D.C. Circuit held that the invocation of Exemption 6 was proper with
respect to *both* individuals *and* non-individual entities, because the FDA's affidavits
had "fairly asserted abortion-related violence as a privacy interest for both the names
and addresses of persons and businesses associated with mifepristone[,]" *id.* (emphasis
added), and concluded that, because "[t]he privacy interest extends to all such
employees[,]" the agency did not need to "justify the withholding of names on an
individual-by-individual basis under FOIA Exemption 6[,]" *id.* (cleaned up).

So it is here.  USAID has averred that violence might befall both individuals and
organizations in Pakistan if their ties to the United States are revealed.  (*See* Lennon
Decl. ¶¶ 7–8.)  Accordingly, the agency asserts that withholding identifying information
about grantee-organizations is necessary to protect the security of a grantee-
organization and its individual employees, and "to the extent that identifying
information such as an organization's address [or name] can implicate the privacy of
individuals, releasing such sensitive information about the organization is functionally
the same as releasing similar information about the organization's individual
members[,]" *Pavement Coatings*, 436 F. Supp. 3d at 131.  Notably, although Stotter
maintains that any alleged harm to the identified individuals and groups is merely
speculative (*see* Pl.'s Mot. at 11–12), Stotter does not dispute that Pakistan remains a
"risky security environment" from the standpoint of U.S.-Pakistani relations (Def.'s
Mot. at 24–25; *see also* Pl.'s Mot. at 11–12).  And USAID's affidavits not only explain
in detail the threats faced by U.S.-affiliated individuals and organizations in Pakistan
generally (*see* Lennon Decl. ¶¶ 7–8), but also note that there are heightened security

concerns with respect to the records that Stotter seeks, given that "[t]he documents at issue here primarily relate to USAID programming in the Federally Administered Tribal Areas in the Khyber Pakhtunkhwa province (sometimes referred to as FATA/KP), which is one of the most insecure areas of Pakistan" (*id.* ¶ 7). Thus, because "publicly identifying" USAID's grantees "would subject those individuals" to "*potentially malicious inquiries*" or "even harassment[,]" disclosure of their identities implicates a substantial privacy interest for the purpose of Exemption 6. *Long*, 279 F. Supp. 3d at 244 (emphasis added).

Finally, Stotter's conclusory assertion that there is "a very significant public interest" in the requested identifying information—which is supported solely by his own declaration contending as much (Pl.'s Mot. at 13 (citing Decl. of Daniel J. Stotter, Ex. 2 to Pl.'s Mot., ECF No. 21-2, ¶¶ 3–8); *see also id.* at 13–14)—does little to suggest or demonstrate that there is a substantial public interest in the identities of these grantees and affiliates in particular, such that their private interests in nondisclosure is overcome. *See Salas v. Office of Inspector General*, 577 F. Supp. 2d 105, 112 (D.D.C. 2008). Stotter also fails to point to any public good or need that disclosure would promote, *see Martin v. Dep't of Justice*, 488 F.3d 446, 458 (D.C. Cir. 2007) (explaining that "the public interest sought to be advanced" must be "more specific than [the requestor] having the information for its own sake" (citation omitted)), nor has he established that the withheld identifying information has inherent value or in any way advances the public's interest in understanding USAID's operations or activities, *see Dep't of Def.*, 510 U.S. at 495.

In sum, the withheld information is of the type that Exemption 6 protects, and there is a substantial privacy interest in the requested identifying information due to the personal security risks that disclosure poses, which clearly outweighs the negligible public interest in the release of that information in light of the related programs and activities of USAID that have already been disclosed.  Therefore, the Court concludes that the agency's withholdings of personal identifying information concerning individuals and organizations in the requested grant forms are authorized under Exemption 6.

### B.  With Respect To The Agency's Withholdings Pursuant To Exemption 6, USAID Has Complied With FOIA's Segregability Requirement

It is also clear to this Court that USAID has met its segregability burden with respect to the information that is has withheld pursuant to Exemption 6.  After collecting the 1,705 pages of documents responsive to Stotter's FOIA request (*see* Def.'s Mot. at 11), USAID "carefully examined each of the responsive documents and released all reasonably segregable nonexempt information to Plaintiff," accompanied by a "chart that summarizes representative information contained in each grant clearance form determined to be responsive to Plaintiff's FOIA request and the potentially sensitive information that may appear in these documents and that may be redacted for particular grants[.]"  (Def.'s Mot. at 26–27; *see also* Lennon Decl. ¶ 11.)  The agency's *Vaughn* index and affidavits were exceedingly specific in detailing the categories of identifying responsive information which it chose to redact from each of the grant clearance forms under Exemption 6.[5]  In addition, the agency's declarations explain the

---

[5] For example, the index states that the redaction pertains to "all or part of [the] following fields[:] Grant Activity Number; Grant Activity Name; Awardee; Point of Contact/Awardee Contact (Including Work Phone, Mobile, Fax Number, Email, Address, City and Postal Code); Activity

reasons for withholding each category of information pursuant to Exemption 6.  (*See, e.g.*, Lennon Decl. ¶ 11 (explaining that "[p]ortions of the grant activity number are often redacted because the alphanumeric codes contain indications of where grant activities occur and which implementing partner is responsible for the activity").)  And it appears that the agency deliberately released some information that was not otherwise deemed protected under a FOIA exemption.  (*See, e.g.*, Attachments B and C, Ex. 2 to Pl.'s Mot., ECF No. 21-2, at 9–16 (attaching a document Stotter received that details the objectives of a specific media program, as well as a copy of the accompanying cooperative agreement and total sum awarded to the media partner, with neither attachment revealing detailed financial information or personal information regarding affiliated individuals).)

USAID also revisited fields that it had formerly "redacted in some instances in the initial release of documents" and proceeded to release information in a subsequent disclosure.  (*See* Lennon Decl. ¶ 11 n.1.)  Thus, the line-by-line analysis for the 1,705 responsive records was neither "short in length [nor] small in number" (Def.'s Reply at 10); yet, the agency undertook the difficult task of untangling the non-exempt from the exempt material.  *See Mead Data*, 566 F.2d at 261 n.55 (recognizing the cost of line-by-line analysis); *see also Wilderness Soc'y v. Dep't of Interior*, 344 F. Supp. 2d 1, 19 (D.D.C. 2004) (noting that it is not sufficient for the agency merely to present "a blanket declaration that all facts are so intertwined" as not to be reasonably segregable). The fact that the agency specified the sensitive fields that were redacted from the release, released the fields not subject to Exemption 6, and even reconsidered former

---

Summary/Justification; Tehsil, Town, City/Village[.]"  (Def.'s *Vaughn* Index at 1.)

redactions gives the Court confidence that USAID made a serious effort to release what it could, and excluded only that which was permissible under Exemption 6. This showing gives rise to a presumption of compliance with the segregability requirement, *cf. Soto v. Dep't of State*, 118 F. Supp. 3d 355, 370 (D.D.C. 2015), and as a result, the Court concludes that USAID has satisfied its segregability burden with respect to Exemption 6.

### C. This Court Cannot Determine At This Time Whether USAID's Withholding Of Budgetary Information Was Proper Under FOIA Exemption 4

With respect to USAID's withholdings that are purportedly justified based on FOIA Exemption 4, the parties dispute whether the information that Stotter has requested—*i.e.*, "any USAID or United States financial grants or funding directed to any Pakistan based media organizations" (Am. Compl. ¶ 13)—qualifies as "confidential" information for the purpose of Exemption 4. *See Pub. Citizen*, 704 F.2d at 1290 (explaining that, per the terms of the FOIA, information that is provided to the government is protected from wider public disclosure under Exemption 4 if that information is "(1) commercial or financial, (2) obtained from a person, and (3) privileged or confidential"). Until recently, in the D.C. Circuit, a court's analysis of whether financial information was confidential pursuant to Exemption 4 "turn[ed] on whether the information was provided to the government voluntarily or involuntarily[,]" *100Reporters LLC v. Dep't of Justice*, 248 F. Supp. 3d 115, 138 (D.D.C. 2017), and if the information was provided involuntarily—as is the case with the financial records that are a required component of the USAID grant applications—the court further evaluated whether a substantial and actual competitive injury would result from its disclosure, *see Nat'l Parks & Conservation Ass'n v. Kleppe*, 547 F.2d 673, 679 (D.C.

Cir. 1976).[6]  Accordingly, the parties in the instant matter centered their respective

arguments around this test (*see* Pl.'s Mot. at 15–16; Def.'s Reply at 8–9), and the

agency's affidavits and *Vaughn* index similarly focused on assertions of competitive

harm (*see* Lennon Decl. ¶ 10 ("If released, the budget information in the [grants under

contract] could a cause competitive cost disadvantage with other partners or grantees.");

*Vaughn* Index at 1 (explaining that disclosing certain information "could cause

competitive harm by: (1) allowing competing implementing partners to gain a

competitive cost advantage over one another and/or (2) allowing vendors to collude and

drive up prices at the expense of U.S. Government assistance")).

However, while the instant case was pending, the Supreme Court abrogated the

D.C. Circuit's competitive-harm test, *see Food Mktg. Inst.*, 139 S. Ct. at 2365–66, such

that the applicable standard now requires an assessment of "two conditions that might

be required for information communicated to another to be considered confidential[,]"

regardless of whether the information is voluntarily or involuntarily shared with the

government: (1) whether the information is "customarily and actually treated as private

by its owner[,]" and (2) whether it was "provided to the government under an assurance

of privacy[,]" *id*. at 2366.  And because neither Stotter nor USAID has addressed this

new test for confidentiality, this Court is unable to resolve the parties' Exemption 4

dispute based on the record presently before it.  Consequently, and for this reason

---

[6] Long-standing D.C. Circuit precedent held that financial information that was provided to an agency
voluntarily was to be treated as confidential for Exemption 4 purposes only "if it [was] of a kind that
would customarily not be released to the public by the person from whom it was obtained."  *Critical
Mass Energy Project v. Nuclear Regul. Comm'n*, 975 F.2d 871, 879 (D.C. Cir. 1992).  But if the agency
had obtained financial material through an *involuntary* disclosure, the D.C. Circuit treated that
information as "confidential" under Exemption 4 if the agency demonstrated that the persons who
submitted the information "(1) actually face competition, and (2) substantial competitive injury would
likely result from disclosure."  *Nat'l Parks*, 547 F.2d at 679.

alone, this Court cannot order summary judgment in favor of either party at this time, and it will require supplemental briefing in order to resolve the remaining legal issues in this case.

## IV.    CONCLUSION

As set forth in the accompanying Order, and for the reasons explained above, Defendant USAID's motion for summary judgment must be **GRANTED IN PART and DENIED IN PART,** and Plaintiff's cross-motion for summary judgment must be **DENIED** in full.  The agency has established that it has properly invoked FOIA Exemption 6 to justify the withholdings that pertain to the identifying information of individuals and organizations that are contained in the requested records, and it has also sufficiently demonstrated that it has complied with the FOIA's segregability obligation with respect to those Exemption 6 withholdings.  But due to an intervening change in the applicable standards for evaluating withholdings under Exemption 4, the Court cannot yet rule on the propriety of USAID's withholdings pursuant to that exemption. Supplemental briefing is required, and will be ordered.


DATE:  October 3, 2020                              *Ketanji Brown Jackson*
                                                    KETANJI BROWN JACKSON
                                                    United States District Judge